**In re Kevin Leroy McMULLEN, Debtor.**

**No. 01–83873.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 4, 2001.

Robert B. Becker, Peoria, IL, Dana N. Monkarsh, Chicago, IL, for creditors.

Karl R. Niebuhr, Peoria, IL, for debtor.

## *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

The issue before the Court concerns the reasonableness of a creditor's flat rate attorney fees and costs, that are to be paid through a Chapter 13 plan to cure a mortgage default. At the scheduled evidentiary hearing, both the Debtor and the creditor chose not to present any evidence and jointly requested that the Court decide the issue based solely on the information contained in the court file.

The DEBTOR, Kevin Leroy McMullen ("DEBTOR"), resides at 1020 Lincoln Road, Marquette Heights, Illinois. Fairbanks Capital Corporation ("FAIRBANKS"), holds a first mortgage on the property. The Chapter 13 plan proposes to pay the mortgage arrearage in the amount of $2,750.00 through the plan, with current mortgage payments to be paid outside the plan. FAIRBANKS objected to the plan asserting that the correct amount of its mortgage arrearage is $5,147.45. FAIRBANKS' proof of claim itemizes the arrearage amounts as follows:

| 5/01—9/01 | 5 @ 524.98 | 2,624.90 |
|---|---|---|
| LATE CHARGES | 5 @ 31.50 | 157.50 |
| FORECLOSURE COSTS | | 981.00 |
| FORECLOSURE FEES | | 800.00 |
| BANKRUPTCY FEES | | 450.00 |
| APPRAISAL FEE | | 134.05 |
| | | ——— |
| TOTAL | | 5,147.45 |

FAIRBANKS did not attach any documentation to its claim supporting the itemization of its prepetition arrearage. However, on December 18, 2001, FAIRBANKS filed a response to the DEBTOR'S objection to its proof of claim and attached ten exhibits marked by consecutive letters A through J. At the scheduled evidentiary hearing, the DEBTOR stipulated to the admission into evidence of Exhibits A through J as attached to FAIRBANKS' response. The DEBTOR also stipulated that the five mortgage payments totaling $2,624.90 and the five late charges totaling $157.50, as itemized on FAIRBANKS' proof of claim, are properly included as part of the allowable arrearage. Accordingly, the only disputed items are the foreclosure costs and foreclosure fees incurred by FAIRBANKS prepetition and the bankruptcy fees incurred postpetition.

**ANALYSIS.**

█ Where a Chapter 13 plan proposes to cure a default, Section 1322(e) of the Bankruptcy Code provides that the amount necessary to cure the default "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e).[1] FAIRBANKS' mortgage and mortgage note are governed by Illinois law and both documents contain a generic provision for recovery of reasonable attorney fees and expenses incurred by the mortgagee. In the absence of a state court judgment awarding fees and costs, the Bankruptcy Court must put itself in the shoes of the state court judge and determine whether the requested fees and costs should be awarded under Illinois law.

█ Contractual provisions shifting liability for a party's attorney fees and expenses to the other party to the contract are enforceable under Illinois law to the extent that the fees and costs are reasonable. Illinois Mortgage Foreclosure Law provides that reasonable attorney fees and other costs incurred in connection with the foreclosure suit are recoverable to the extent provided for in the mortgage. 735 ILCS 5/15–1510; *First Federal Sav. Bank of Proviso Tp. v. Drovers Nat. Bank of Chicago*, 237 Ill.App.3d 340, 606 N.E.2d 1253, 180 Ill.Dec. 176 (2d Dist.1992).

█ The party seeking the fees has the burden of presenting the court with sufficient evidence from which it can determine the reasonableness of the fees. *J.B. Esker & Sons, Inc. v. Cle–Pa's Partnership*, 325 Ill.App.3d 276, 757 N.E.2d 1271, 259 Ill.Dec. 136 (5th Dist.2001). Ordinarily, the party seeking attorney's fees must set forth with specificity the legal services provided, the identity of the attorney providing the legal services, an itemization of the time expended for the individual service, and the hourly rate charged. *Id.* The determination of reasonableness is a matter for the trial court's discretion and the court may use its own knowledge and experience in making that determination. *Selvy v. Beigel*, 309 Ill.App.3d 768, 723 N.E.2d 702, 243 Ill.Dec. 399 (1st Dist. 1999).

The record is devoid of any information as to the specific terms of the fee agreement between FAIRBANKS and its attorneys. The only documents in the file from which the Court is able to glean any information at all about the fees charged are copies of the invoices sent to FAIR-

---

1. Section 1322(e), enacted as part of the Bankruptcy Reform Act of 1994, is only applicable to agreements executed after October 22, 1994.

BANKS by its attorneys. Ordinarily, this would be insufficient. Because the Court concludes that the attorney fees are charged on a flat fee basis, and because the Court has substantial knowledge of foreclosures, the Court is able to determine reasonableness without time records. Further, both parties have requested that the Court make a decision based on the file documents and it is apparent that the parties are looking to the Court for direction on this issue for future cases. Therefore, the Court will decide the issue on the basis of the file information, drawing reasonable inferences therefrom.

## 1. FORECLOSURE FEES.

■ The mortgaged property is located in Tazewell County, Illinois. FAIRBANKS filed its foreclosure complaint in the Tazewell County Circuit Court on August 2, 2001. The DEBTOR filed his Chapter 13 petition on September 12, 2001, prior to entry of a Judgment of Foreclosure. FAIRBANKS requests "foreclosure fees" in the amount of $800.00. Supporting, detailed time records from its attorneys are conspicuously absent. The invoice attached as Exhibit E breaks the fees down into two parts: $600.00 for "Atty Fees—Foreclosure" and $200.00 for "ADDITIONAL ATTY FEES PREP REPAY PLAN." [2] At the hearing, the DEBTOR stipulated that the $200.00 figure for preparation of a prepetition repayment plan is reasonable but he disputed the reasonableness of the attorney's fees of $600.00 relating to the foreclosure action.

■ In determining the reasonableness of fees incurred in a foreclosure action, Illinois courts consider a variety of factors, including the skill and standing of the attorneys employed, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation. *Chicago Title & Trust Co., Trustee Under Trust No. 89–044884 v. Chicago Title & Trust Co., Trustee Under Trust No. 1092636*, 248 Ill.App.3d 1065, 618 N.E.2d 949, 188 Ill. Dec. 379 (1st Dist.1993). Where reasonableness of a flat fee is at issue, the court must establish a baseline for comparison by engaging in a lodestar analysis, taking into consideration the number of hours reasonably expended times a reasonable hourly rate. *In re Smith*, 230 B.R. 437 (Bankr.N.D.Fla.1999). This baseline amount is determined by the evidence presented and by the court's own experience and knowledge of customary fees and costs charged in comparable cases. If the flat fee amount is less than the baseline, it may be allowed in full; if greater than the baseline, the fee should be reduced to the baseline amount.

■ While the failure of the creditor's attorney to submit detailed time records would ordinarily be fatal to the claim for attorney's fees, this Court has substantial personal experience with mortgage foreclosure actions, and has the knowledge and experience to determine the reasonableness of the attorney's fees and expenses in question. Applying the above factors here, based on this Court's own knowledge of services rendered and the reasonable value thereof, FAIRBANKS' fee of $600 to $800 would be fair and

---

**2.** Because an award to a creditor of its attorney fees and costs is intended to reimburse the creditor for fees and costs actually incurred, the analytical starting point is the terms of the fee agreement between the creditor and its attorney. Unfortunately, those terms are not part of the record. The invoices show $800.00 for fees actually billed to FAIRBANKS, which the Court must conclude is the fee for the entire foreclosure action.

reasonable for handling a routine foreclosure suit from beginning to end.[3]

 That fee is excessive, however, given the fact that the foreclosure action in question had only recently been commenced. In this Court's view, FAIRBANKS' flat fee must be prorated. As the court recognized in *In re Smith*, 230 B.R. 437, 439 (Bankr.N.D.Fla.1999), in holding a flat rate attorney's fee to be excessive, "the debtor should not have to bear the burden of paying a fee for services that have not been performed," otherwise the creditor's attorneys "would be getting a windfall at the expense of debtors."[4] In this Court's experience it is fair and reasonable to prorate a flat fee for a foreclosure case on the basis of one-third for the complaint stage, one-third for the judgment stage, and one-third for the sale stage. Here, only the complaint stage was completed. A fee of $200.00 (one-third of $600.00), is the portion of the flat fee reasonably attributable to the preparation and filing of the complaint. The sum of $200.00 for these services is within the baseline boundary for the same services charged hourly.

Accordingly, the sum of $200.00 will be allowed as reasonable attorney's fees for the tasks performed in the foreclosure case, not including the repayment plan.

Since the DEBTOR stipulated to the additional $200.00 for the repayment plan, of the $800.00 total requested for foreclosure fees, the sum of $400.00 will be allowed, based on the evidence before the Court, as a reasonable attorney's fee for the foreclosure action.

## 2. FORECLOSURE COSTS.

 The foreclosure costs are itemized on Exhibits D and E as follows:

| | |
|---|---:|
| Complaint | $ 78.00 |
| Summons | 100.00 |
| Lis Pendens | 18.00 |
| Title Commitment Report | 550.00 |
| Post Complaint Title Report | 50.00 |
| Duplicate Summons | 80.00 |
| Alias Summons | 40.00 |
| Federal Express | 15.00 |
| Delinquent Tax Cost Researched 2000 | 50.00 |
| TOTAL | $981.00 |

The $78.00 filing fee is supported by a copy of the receipt at Exhibit F and is allowed as reasonable. The $18.00 recording fee for the lis pendens notice is allowed as reasonable. The entries for Summons, Duplicate Summons and Alias Summons total $220.00. The only supporting document relating to service of process is attached as Exhibit H and shows service fees in the amount of $140.00 for service on the three Defendants for whom personal service (rather than service by publication) would be necessary. There is no support in the record for issuance of an

---

**3.** The information provided, as well as this Court's knowledge and experience, leads the Court to believe that the law firm representing FAIRBANKS handles residential mortgage foreclosures on a flat fee basis, apparently at the rate of $600.00 plus costs for the foreclosure and an extra $200.00 for preparation of a repayment plan The DEBTOR did not dispute the apparent flat fee arrangement and requested that the Court determine a reasonable fee based on the record. For purposes of this Opinion, the Court will assume, based on the manner in which the fees are billed to FAIRBANKS, that Pierce and Associates, P.C. handles residential real estate foreclosures and consumer bankruptcies on a flat fee basis. In future disputes, requests for

attorney fees and expenses should be supported by evidence of the specific terms of the representation, as well as time records detailing the services rendered. Had the DEBTOR in this case been less conciliatory, this Court may well have ruled that FAIRBANKS' failure to make an evidentiary record would result in denial of its claim for attorney fees.

**4.** The court in *In re Smith*, was determining the reasonableness of a flat fee for services rendered in the debtors' bankruptcy proceedings. Its reasoning, however, is equally applicable to flat fees incurred by the mortgagee prior to the bankruptcy proceedings.

**564**

alias summons and the Court is unable to explain the cost attributable to the entry for Duplicate Summons. Accordingly, service fees in the amount of $140.00 will be allowed as reasonable. The additional costs of $80.00 related to summons or service are unsubstantiated and are disallowed.

The $550.00 expense attributable to the Title Commitment Report is not supported by any receipt or other document. In this Court's experience, a commitment for title insurance, with minutes of foreclosure, for a minimum amount, is routinely obtainable in Tazewell County for no more than $250.00. The extra $300.00 for the Title Commitment Report in this case is unexplained and, in this Court's opinion, unreasonable and will be denied. The $50.00 expense for the Post Complaint Title Report is reasonable and will be allowed. The Court cannot say that the $15.00 Federal Express charge is unreasonable and it will be allowed.

In this Court's experience, title insurance companies in Tazewell County routinely search for and provide information in the Title Commitment relating to unpaid real estate taxes and do not charge a separate fee for this service. Accordingly, the Court finds that the $50.00 expense attributable to Delinquent Tax Cost Researched 2000 is both unsubstantiated and unreasonable and will be denied. Of the $981.00 requested for foreclosure costs, a total of $551.00 is allowed as reasonable

with the balance of $430.00 disallowed as unsupported and unreasonable.

No supporting documentation is provided with respect to the Appraisal Fee in the amount of $134.05. Based on this Court's knowledge and experience, it is neither necessary nor reasonable to incur an expense for a property appraisal, if at all, prior to the sale stage of the foreclosure action. It is not necessary for a first mortgage holder to know the current fair market value of the property for purposes of the foreclosure complaint or judgment of foreclosure. Here, the Court notes that, based upon the date of the mortgage, FAIRBANKS should have had a fairly recent, two-year-old appraisal in its file. The requested Appraisal Fee will be denied as unsupported and unreasonable.[5]

### 3. BANKRUPTCY FEES.

The only remaining item is the $450.00 requested for Bankruptcy Fees, incurred postpetition. Under § 1322(e), the amount necessary to cure the mortgage default is determined by the mortgage and applicable state law.[6] In other words, it is the same amount as would be required to cure if the debtor were not in bankruptcy. 8 *Collier on Bankruptcy,* ¶ 1322.18 (15th ed. rev.2001). Here, the note and mortgage provide that FAIRBANKS is entitled to reasonable attorney fees, and the postpetition bankruptcy fees, incurred by FAIRBANKS

---

**5.** Even if a property appraisal is reasonably necessary at the sale stage of a foreclosure, to assist the mortgagee in determining its bid price, obtaining an appraisal immediately upon filing the complaint, seven months or more before sale, constitutes improper frontloading of expenses and is inherently unreasonable.

**6.** Although the legislative history states that this provision was enacted to overrule the Supreme Court's decision in *Rake v. Wade,*

508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), holding that the Bankruptcy Code required interest to be paid on mortgage arrearages even where not required by state law, courts have held, based on the plain language of § 1322(e), that it is not limited to interest charges, but includes attorney fees. *In re Landrum,* 267 B.R. 577 (Bankr.S.D.Ohio 2001). This Court agrees with that result, for the mortgagee is entitled to receive the benefit of its bargain—not more, but not less.

prior to confirmation, constitute part of its arrearage claim and may be included in the amount required under the plan to cure the default.[7] Moreover, FAIRBANKS is oversecured and Section 506(b) of the Bankruptcy Code permits the addition to an oversecured claim of "reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). Although the determination of reasonableness is to be made in accordance with federal standards, for purposes of this case, that standard differs little from that utilized by the state courts and referenced above.

■ Turning to the issue of the reasonableness of the fee requested by FAIRBANKS, other than the single line on the invoice attached at Exhibit J for "Atty Fees—Bankruptcy" in the amount of $450.00, this request is not supported by detailed time records or any other documentation. As with the Foreclosure Fees, the Court draws the reasonable inference that the law firm representing FAIRBANKS in bankruptcy cases does so on a flat fee basis. It appears that the flat fee of $450.00 for the representation of FAIRBANKS in the Chapter 13 case includes preparation of the proof of claim and objection to plan and appearance at the related Court hearings. Here, an objection to the plan was appropriate and necessary to protect FAIRBANKS' interest. Under these circumstances, a flat fee of $450.00 is reasonable and will be allowed.[8]

Upon review of the evidence, and based on this Court's experience and knowledge of attorney fees and expenses for comparable cases, the Court finds, on the record made here, that the following amounts should be allowed as the default amount proposed to be cured through the DEBTOR'S Chapter 13 plan:

| | |
|---|---|
| Prepetition Payment Arrearage | $2,624.90 |
| Late Charges | 157.50 |
| Attorney Fees—Foreclosure | 400.00 |
| Attorney Fees—Bankruptcy | 450.00 |
| Foreclosure Costs | 551.00 |
| **TOTAL** | **$4,183.40** |

The additional amounts requested by FAIRBANKS are denied for the reasons stated herein. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### *ORDER*

For the reasons stated in the Opinion entered this day, IT IS HEREBY ORDERED as follows:

1. The amount necessary to cure the default on the first mortgage held by FAIRBANKS CAPITAL CORPORATION is $4,183.40;

2. The default cure amount consists of a payment arrearage of $2,624.90, late charges of $157.50, foreclosure attorney fees of $400.00, foreclosure costs of $551.00, and bankruptcy attorney fees of $450.00;

3. The requested attorney's fees and expenses in excess of this amount are DISALLOWED;

4. Claim # 3 filed by FAIRBANKS CAPITAL CORPORATION is al-

---

**7.** In so holding, this Court underscores the debtor's obligation to continue to make regular mortgage payments after the filing of the Chapter 13 petition. A debtor's failure to make the preconfirmation regular mortgage payments indicates an unwillingness to comply with the Bankruptcy Code requirements, and will ordinarily justify stay relief. Only under extraordinary circumstances would a debtor be permitted to include postpetition mortgage payments in the plan.

**8.** A fee of $450.00 may be unreasonable in other Chapter 13 cases where, for example, an objection to the plan is not necessary.

lowed in the reduced amount of $4,183.40; and

5. Confirmation of the plan is DE-NIED and the DEBTOR shall have fourteen (14) days in which to file an Amended Chapter 13 Plan consistent with this Opinion and Order.