José Ruiz de Val, demandante y apelante, *v.* Lucía Morales Vda. de Riefkohl, demandada y apelada.

No. 5343.—*Sometido:* Marzo 5, 1931. *Resuelto:* Marzo 30, 1932.

Nota: Véase el prefacio.

*C. Coll y Cuchí,* abogado del apelante;  *E. H. F. Dottin,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este es un pleito titulado en "cobro de honorarios", más la primera causa de acción o la primera narración se basa claramente en un supuesto incumplimiento de contrato. La segunda causa es en verdad una en cobro de honorarios.

■ En la primera causa de acción se alega que Lucía Morales, viuda de Riefkohl, utilizó al demandante como abogado suyo, debido principalmente a un conflicto surgido entre la demandada y los herederos de su difunto esposo, Luis Riefkohl. El demandante alegó que la demandada tenía en su poder la suma de cuarenta mil dólares que procedían de su esposo, y la cuestión a resolver por él era si ella tenía derecho a retener dicha suma. La demanda aducía que las partes habían convenido expresamente lo siguiente:

"(1) El demandante Sr. Ruiz de Val representaría a la demandada Sra. Morales en su carácter de abogado y le prestaría todos los servicios profesionales necesarios a reivindicar para su cliente la dicha suma de cuarenta mil dollars.

"(2) La demandada pagaría al Sr. Ruiz de Val por estos servicios la suma de cinco mil dollars.

"(3) La demandada entregaría al Sr. Ruiz de Val la dicha suma de cinco mil dollars, en el entendido que si su derecho fuere reconocido sin necesidad de obligar el Sr. Ruiz de Val podría usar de esa suma la parte que creyere conveniente para efectuar una transacción; y el resto lo aplicaría al pago de sus honorarios.

"Si por el contrario el litigio fuere necesario, entonces dicha suma se aplicaría a pagar los servicios del demandante."

El demandante alegó que comenzó inmediatamente el estudio del caso y trató de llegar a la transacción antedicha, pero que fué impedido de lograrla porque la demandada lo privó de su representación e impidió que prosiguiera en el cumplimiento del contrato celebrado entre él y la demandada. La alegación final era que debido al incumplimiento del contrato, el demandante sufrió daños y perjuicios por la suma de $5,000.

Al momento de radicar esta demanda el demandante tenía en su poder la suma de $5,000 a que se refieren los párra-

fos anteriormente transcritos. De suerte que es evidente que no se demandaba con el objeto de recobrar dichos $5,000 sino $5,000 distintos que él había dejado de obtener con motivo del supuesto incumplimiento del contrato. Podemos repetir que esta causa de acción es claramente, no por honorarios, sino por el supuesto incumplimiento.

██ La cuestión en controversia era la suma de $40,000 más o menos que el Sr. Riefkohl dió a Lucía Morales antes de su matrimonio. El demandante sostenía insistentemente que no podía ser considerada como una "capitulación matrimonial", pero fuérelo o no se trataba claramente de una donación hecha por Riefkohl a su futura esposa, y no vemos razón alguna por la cual tal donación no era perfectamente válida, siempre que no perjudicara la legítima correspondiente a sus herederos forzosos. Creemos que doquiera prevalezca el derecho común inglés o el derecho romano, un hombre *sui juris* puede regalar a su futura esposa o a cualquiera otra persona mientras permanezca soltero, una suma no prohibida por la ley. Por tanto, la transacción en perspectiva era enteramente innecesaria e inútil, y cualquier abogado en ejercicio debió saberlo, y así aconsejarlo a su cliente. Por tal consejo él quizá tenía derecho a honorarios, mas no por la suma de $5,000. Si el pleito fué instituído por los herederos de Riefkohl o si ellos claramente amenazaban con iniciarlo, la suma que debía pagarse al abogado podría ser aumentada. Somos de opinión que la apelada está en lo cierto al sostener que no existió verdadera causa (*consideration*) para el supuesto contrato. Además, nos inclinamos a convenir con la corte inferior en que el contrato sobre honorarios celebrado para efectuar algo inútil debe examinarse con cautela y no sostenerse, a menos que el abogado claramente pruebe la necesidad de tal convenio.

█ Sin embargo, la corte examinó la evidencia y resolvió que no había contrato alguno, que la entrega de los $5,000 por Lucía Morales era para efectuar una transacción y no en pago de servicios. Aunque hubo conflicto entre la declara-

ción del demandante y las de la demandada y su hermano, la evidencia justifica esta conclusión. La corte específicamente dijo que no tenía motivo alguno para dudar de lo declarado por esos dos testigos.

El demandante entregó a la demandada un recibo en que se consignaba lo expresado en la parte arriba citada. El demandante se fundó principalmente en la entrega de este recibo que contenía la manifestación relativa al pago de honorarios. Esa era una manifestación unilateral. Naturalmente, si un demandado acepta un recibo y hace algo de conformidad con los términos del mismo, esa conducta podría ayudar a una parte a probar la existencia de un contrato. Empero, cuando la demandada y sus testigos niegan la existencia de tal contrato, el documento en sí carece de valor.

Asimismo, como cuestion de derecho, resolvemos que si se emplea a una persona para celebrar una transacción, su destitución no le da derecho a obtener la cantidad mencionada en el contrato, a menos que el asunto quede definitivamente transigido. La persona despedida puede demandar sobre un *quantum meruit*, pero raras veces tendría derecho a toda la cantidad aludida en el contrato, especialmente en ausencia de prueba sobre la consumación del compromiso, o de otras materias en que un cliente pueda haber sido ayudado por su abogado. Sin embargo, en parte alguna de su demanda trata el actor de recobrar servicios prestados a este respecto, sino sólo por el incumplimiento del contrato.

La segunda causa de acción es por el cobro de $10,000 en compensación de otros supuestos servicios prestados por el demandante. La corte consideró cuidadosamente la evidencia y limitó este resarcimiento a la cantidad de $2,000. La prueba pericial fué contradictoria en cuanto al valor de los servicios, mas no hallamos que la corte cometiera error al fijar la cuantía. Algunos de sus servicios eran claramente no profesionales, es decir, no eran necesariamente los servicios de un abogado. Por ejemplo, la conveniencia de arren-

dar un predio de terreno en Maunabo o de obtener la venta de 50 quintales de café. Bajo todas las circunstancias la corte tenía derecho a considerar que los servicios valían menos que lo que declaró cualquiera de los peritos, o en otras palabras, a determinar lo que consideraba como el valor razonable de tales servicios. No hallamos error en la apreciación de la prueba sobre este particular.

La demandada radicó una contrademanda para recuperar la suma de $5,000 entregádale al demandante. La corte en su sentencia ordenó que se devolvieran los $5,000 a la demandada. Convenimos con la corte en que como se trataba de un mero depósito y la transacción jamás se llevó a efecto, la demandada tenía derecho a la devolución. El error alegado a este respecto no se discute en el alegato del apelante, a no ser para decir que el error había sido discutido al argumentarse los otros errores. No vemos que la discusión de los otros errores abarque la teoría de la corte.

Quizá si sus servicios hubieran beneficiado a su cliente, el Sr. Ruiz de Val habría tenido derecho a reclamar compensación por su trabajo inicial, pero en un *quantum meruit* deberíamos poner en duda el valor de los servicios. De todos modos, este pleito no ha sido radicado con ese fin.

*Debe confirmarse la sentencia.*